Good morning. Please accord. I'm Dave Parmenter. I represent Mr. Elorza's council. I appreciate the opportunity to be here on his behalf. So you're from Idaho? I am. Well, I'm sorry we don't have our Judge Randy Smith here to welcome you Idaho folks, but we'll pass on his hellos for him. Please do. I have the pleasure of representing Mr. Elorza. Basically, Mr. Elorza came up with two brothers and another friend by the name of Maria Mendoza from Fresno to Pocatello to investigate a domestic disturbance between the sister and another co-defendant, Jaime Ontiveros, who ended up being a co-defendant. It's our contention that Mr. Elorza was primarily convicted because he was in a car carrying drugs. There were two vehicles. Well, you're sort of arguing mere presence, essentially, and attacking the sufficiency of the evidence. So I guess what would be helpful for me would be, you know, why aren't you just making a jury argument to us again? You had the, you know, those are all things that perhaps, you know, prosecutors would rather have. You know, obviously they always want someone on video. They want a confession. They want all of those things, and they don't necessarily have that. But it seems, you know, there's also an argument. You argue that Sanchez Elorza plausibly explained how he ended up in the car with the drugs and why he touched the bag containing the drugs, but the government offered evidence suggesting that he made the story up after the fact. So why isn't this just a situation where you said one thing, they said another thing, and they believed the prosecution, and they are entitled to all inferences in their favor? So why isn't this a jury argument? Well, to an extent it is. I certainly acknowledge that he was found guilty by the jury, but would indicate that the individuals in the second car, which was also stopped, detained, none of them were ever charged. Two of those individuals were his brothers. Now I understand the evidence between the two brothers and my client might be different, but I don't think significantly. The evidence in this case basically talked about an interview with an officer, Zweigert, who by some of the testimony from other experts indicated that he used the wrong term for fingerprints or at least didn't use the best term most commonly known. And people obviously get nervous when they're interviewed by officers. I don't think it's that unusual for a person to maybe appear calm on the surface, and then later, according to the officer anyway, have some nervousness about them when they're pressed a little bit. Now the court gave the mere presence instruction, correct? Correct. Okay, so we're not talking about an instructional issue. It would seem to me if we summarized the incriminating evidence with that to give the inferences, you've got Sanchez Olorza admitting that he touched the bag containing drugs. He acted nervous and changed his story when asked whether his fingerprints would be on the bag. There was an audio recording of him conferring with co-conspirators about a possible cover story after they were arrested. There was evidence suggesting that drug dealers do not bring just anyone along during a drug deal, especially a big one. And he came from Fresno where one of the other co-conspirators indicated that the drugs had come from before he arrived. So have I sort of summed up the damning, the bad evidence? I think that's a good summary. I would note that the purported statement with the co-conspirator was consistent with the account that both he and his brothers came as to the reason coming up from Fresno. The circumstances pertaining to bringing other individuals to the circumstance I think is the biggest problem I have, and that is you've got two separate vehicles, one with drugs, one without, but everybody's obviously traveling together. In one vehicle, everybody's charged. Two individuals are known to be involved, or at least have been viewed before. Mr. Justino Macedo had been seen before in the presence of Jaime Sontiveros, and Jaime Sontiveros was the focus of the investigation. And just by, it's our contention, my client's contention, just by mere coincidence, he ended up riding in the vehicle with those two rather than in the other vehicle with the other individuals. So certainly there is circumstantial evidence, and I think it is correct that the evidence has to be considered in light of most, in the light most favorable to the government. But it's our contention that the circumstances are fairly light. It is circumstantial evidence, and there's significant questions about why he ended up being charged rather than individuals in the other vehicle. But the decision on who gets charged really is the prosecutor's decision, isn't it? That's true. So we don't get to decide on the appeal if somebody else should have been charged. That's true. And I'm not necessarily suggesting that the others should have been charged. I'm suggesting that perhaps my client shouldn't have been charged given his circumstances and given the relation with the people in the other vehicle as they were traveling. Would you like to reserve the balance? I'll reserve the balance. Thank you. Okay. Good morning. Good morning, Your Honors. May it please the Court, Counsel, my name is Michael Fica. I'm an Assistant United States Attorney in Idaho. I was also trial counsel at the trial in the prosecution of the case as well as the attorney that charged the case in the grand jury. Your Honors, the crux of the appellate's argument is even looking at this case in light most favorable to the government with all reasonable inferences, all reasonable inferences towards the government,  although the defendant was traveling in a vehicle with a pound of methamphetamine, the defendant admitted that his fingerprints would be found on the container containing the methamphetamine, and that after hearing testimony that the defendant changed his story in several different ways with regard to his involvement in this case. Was everybody in that one car charged? Everybody in the vehicle that the methamphetamine was found was charged. That's correct, Your Honor. And nobody in the second car was charged? Nobody in the second vehicle was charged, Your Honor. All right. So of the four people charged, how many went to trial? There were actually three people in the vehicle with the methamphetamine. The only person that went to trial was the appellate, Mr. Sanchez-Elorza. The other two individuals entered guilty place. Did the other two testify against them? They did not. They chose not to. So it's all a, well, I don't know. I guess there's something of an admission, but mostly a circumstantial case. That's absolutely correct, and I think we acknowledged that from the very beginning, that the primary evidence in this case is circumstantial, although I think there are two other areas of evidence that are significant that the jury heard. First, the statements of the co-defendant, and there were some inconsistencies with regard to his statement. And finally, the testimony of Detective Javier Bustos. Well, so the statements, that would be the co-conspirator? So did they come, they didn't testify? No. I misspoke if I said co-conspirator, Your Honor. The statements of the defendant. Detective. You said co-defendants. Oh, I'm sorry. I apologize. Okay. The statement of the defendant. Inconsistent statements of the defendant. Okay. Well, it's obviously, you know, it's obviously somebody's guilty because, I mean, there's a bank, you know. Absolutely. And so the question is, well, you know, how many people are involved? That's what this case comes down to. Well, and what's significant is Detective Bustos testified that at a previous meeting, there were several prior transactions with Mr. Olivares. They were all quarter pound transactions, quarter pounds of methamphetamine. Detective Bustos testified that at a previous meeting, a no-dope meet in the nomen culture, that he had a conversation with Mr. Olivares where he talked about buying larger quantities. And Mr. Olivares said, told him at that point, the co-defendant, I may be bringing other people for future transactions. And Mr. Bustos testified, he responded, that's fine. If you trust them, I'll trust them. In addition, when Detective Bustos tried to pin Mr. Olivares down on the pound, essentially Detective Bustos, working in an undercover capacity, ordered the pound of methamphetamine. He asked for a price break, essentially a quantity price break. The transaction, the nature of the transaction changed at that point because up to that point, Detective Bustos had been solely interacting with Mr. Olivares. When Detective Bustos asked for a price reduction for the pound, Mr. Olivares said, I got to make a call, I'll get back to you. And called back a few minutes later and said, okay, yeah, I can give you a break on the pound. Detective Bustos testified, he knew at that point, that he was now dealing with additional individuals. And he said, based upon his training and experience, that he knew at that point, when he went to that pound deal, there would be more people there that were involved. Well, where do you fit into the U.S. v. Neville's analysis? Well, Your Honor, I think one of the problems with these type of cases, and I've looked at all the cases, including Neville's, is it's very fact specific to each particular case. But I think what we have in this case is a couple of different things. Really, I would identify three areas of evidence that I think are significant in this case. First, as I stated, his presence at the transaction, albeit circumstantial, is some significant circumstantial evidence. In addition, we have the testimony of Detective Bustos, a 23-year veteran, one of the most senior narcotics detectives in the state of Idaho, who testified that in his experience over 23 years, especially with drugs of this amount, he's never seen a situation where an individual would bring an unknowing participant. So what's the movement of the cars? How does that factor in? Pardon me, Your Honor? The movement of the cars. Where do the cars drive? What happened is... And there's two of them that are obviously together. The transaction was originally to take place at a particular casino. Surveillance lost the cars at one point. And so in essence, what happened is the surveillance officers were not able to ascertain with assurity exactly who would be present at the transaction. So they changed the location? So the officers changed the location, intending to essentially flush out who may be involved in the case. The officers observed two separate vehicles, six separate people leave the location. And the story was they were moving it to another location, but the intention at that point of the officers was to stop both cars on the way to that location. They stopped both cars about a mile apart. Well, in your view, does the fact that the location's changed and that the defendant is still there, does that strengthen your case beyond mere presence? Or do you think that that's a neutral fact? Or what do you think? I think it's probably a neutral fact in this regard, Your Honor. The defendant's story was he was gambling. Because the defendant testified. The defendant's story was that he was gambling at the casino, and Mr. O'Leary said, okay, it's time to go, and they left. There were several things, though, that—several things without regard to that, that made the defendant's story, in my opinion, and I believe in the jury's opinion, virtually implausible. From the very beginning, as Mr. Parmenter correctly stated, the defendant's story was he had come up from Fresno to essentially move his sister, who was estranged from her husband, back to California. But when he'd done so, the estranged husband suggested that they essentially road-tripped to a casino three hours away, and he said, okay, I'll do that. I think from that very point, the defendant's story became tenuous. And from that point on, there's further attenuations. When the defendant told Detective Zweigart that his fingerprints were on the store, or would be on the bag, he changed his story. First he said he touched the bag at a gas station. Then he said no, he touched the bag when he was at the house to begin with. When he testified on cross-examination, I asked him to explain how he touched the bag. During his cross-examination, he changed his story about how he touched the bag, first stating that he touched the bag like this as he closed the trunk. And then when we discussed the fact that he touched the bag. Did you actually have his prints? No. There were no prints found on the bag, Your Honor. It was actually tested? I believe the testimony was that when he admitted that his fingerprints were going to be on the bag, the officers elected not to test it at that point since they had his admission. And finally, Your Honor, and really sort of the culminating piece of evidence, was his statement in the back of the car where he says to the co-defendant, I'm going to tell them I was coming up to visit my sister and went to the casino. And then he says to each his own, we don't talk about each other. But even more significant than that, when I asked about that on cross-examination, contrary to the evidence of the recording itself, which was presented to the jury, he denied even making that statement in the back of the car. So not only did the jury have multiple inconsistent statements on his part, they had the testimony of a 23-year narcotics investigator who testified that he had to have been an annoying participant, and the circumstantial evidence of his presence. Isn't that annoying participant stuff kind of shaky, though? Pardon me, Your Honor? Isn't that annoying participant stuff kind of shaky anyway? The officer testifies, I've never seen anybody at a drug deal who doesn't know the drug deal is going on. Your Honor, I... In Arizona, we hear that all the time. Absolutely. And I guess at the risk of overstretching my argument, I would suggest this. If that was the only evidence I had, we may be having a whole other discussion. For example, the three people in the other car, that was the only evidence I had with regard to the three people in the other car. They didn't get charged. There was additional evidence with regard to this defendant. He got charged. All right. Okay. We don't appear to have any additional questions. Thank you for your argument. Thank you, Your Honor. I have just a couple of points in rebuttal. One of the items of evidence that were mentioned previously was this connection with Fresno. It's my understanding that Jaime Sontiberos, the co-defendant, who was the focus of the investigation, had been to Fresno at some time in the past to pick up drugs there, but no indication otherwise that drugs were brought with these individuals when they came up. Maria Mendoza had also testified that when she came with these individuals, she had checked the car and had loaded the vehicle, was the driver, and nothing was found therein. Mr. Detective Bustos also acknowledged that there was some possibility that the defendant was not a factor, was not knowledgeable, at least at some point in his testimony. And in sum, Your Honors, this is a circumstantial case. Certainly there was some circumstantial evidence, but my question is if there's enough given the presence and given the relationship with the other brothers to find sufficient to overturn the verdict. Thank you. All right. Thank you both for your argument. This matter will stand submitted.
judges: Collins, Tashima, Callahan